**Charles JONES et al., Plaintiffs,**

**v.**

**Sol WITTENBERG et al., Defendants.**

**Civ. No. 70–388.**

United States District Court,
N. D. Ohio, W. D.

April 30, 1973.

Frank Merritt, R. Michael Frank, Advocates for Basic Legal Equality, Toledo, Ohio, for plaintiffs.

Anthony Pizza, Pros. Atty., Lucas County, for the Sheriff.

John F. Hayward, Toledo, Ohio, for County Commissioners.

MEMORANDUM

DON J. YOUNG, District Judge:

This civil rights action was originally commenced in December, 1970, by pris-

oners in the Lucas County Jail, seeking relief against conditions therein. This Court, in an opinion reported in 323 F. Supp. 93, found that the prisoners were entitled to relief. Further hearings were had, and on July 9, 1971, the Court in a further opinion, reported in 330 F. Supp. 707, detailed the nature and extent of the relief granted. Thereafter, on July 30th, 1971, an order was entered setting forth in very considerable detail the actions to be taken by the various defendants to remedy conditions in the jail, and retaining jurisdiction "[F]or a sufficient length of time . . . to make it reasonably certain that the changes of methods and practices required will not be abandoned, forgotten, or neglected, but have become permanently established."

About five months later, in response to a motion of the plaintiffs, the defendants were ordered to show cause why they should not be held in contempt for failure to comply with the Court's order of July 30. After hearing it was found that the defendants were in contempt for failure to comply with a large number of the specific provisions of the order. The Court granted limited periods of time to the various defendants to bring themselves into compliance with the provisions of the order they were found to have violated, and imposed fines of twenty-five dollars per day for each day of failure to comply after expiration of the extended terms.

The matter then lay in a rather quiescent state for approximately a year. During that year the defendant Metzger was defeated for the office of Sheriff, and William M. Callanan was elected to and did succeed him on January 1, 1973.

On March 5, 1973, Sheriff Callanan filed a motion to be relieved of compliance with all former orders of the Court, claiming that it was impossible for him to comply with the order of July 30, 1971, in specified particulars. This he followed on March 22, 1973, with another motion to establish age limits on persons visiting inmates of the jail.

Although the original action was against Sheriff Metzger both individually and officially, the relief granted against him was against him only in his official capacity. Consequently, particularly since his successor has entered his appearance by invoking the jurisdiction of the Court, it will be considered that Sheriff Callanan has been substituted as a party defendant for Sheriff Metzger, and henceforward the Court will refer merely to the defendant Sheriff without individual designation.

This case is simple enough from a purely legal standpoint, but from the standpoint of the practical application of equitable principles, it would be unfair to hold the present Sheriff completely accountable for the actions of his predecessor. Were it not for this, the Court would have little reason not to find the defendant Sheriff in contempt for his utter failure to abide by the Court's order, and would punish him accordingly.

After some three days of hearing evidence, the facts are established beyond any doubt whatever that the defendant Sheriff has at no time since the order was entered been in compliance with paragraph 14 of the order, which reads as follows:

Within thirty (30) days from the entry of this order provide a sufficient number of guards so that at all times there will be not less than two guards on duty on each floor, at least one of whom shall at all times be on patrol of the cell blocks, and providing a sufficient number of supervisory and relief personnel to insure that the required number of guards are on duty and that their patrolling activities are carried out.

The evidence also established beyond question that the provisions of paragraph 17(h) are not now, and never have been carried out fully. This paragraph reads as follows:

Establishment of visiting programs, which shall include daily visiting hours, both in the daytime and in the evening, and especially upon holidays

and weekends; the provision of much more adequate physical facilities for visitation; removal of the limitations on visits by children and by persons not members of the inmate's immediate family; . . . .

The Court here emphasizes the words "the provision of much more adequate physical facilities for visitation."

The evidence incidentally revealed marginal compliance or non-compliance by the defendants with numerous other provisions of the Court's order, but the Court will not at this time consider those matters, or take action against the defendants for their contemptuous treatment of them. All of the defendants should be advised that the Court feels that even with the change in administration of the Sheriff's office, ample time has now elapsed to enable all of the defendants to bring themselves into complete compliance with the Court's order. When the major problems involved in the defendant Sheriff's present motions are disposed of the Court will determine what action is to be taken about the remaining matters.

One thing was made crystal clear by the evidence which was offered during the three days of hearing. There has been no change whatever in the conditions in the jail which gave rise to the Court's original findings and order. Therefore, the Court will in no way change any of the specific orders which were made previously. The parties will take notice that these specific requirements all are and will remain in full force and effect. Time is running out for the parties to bring themselves in compliance, particularly in respect to those matters which were brought out in the evidence at these hearings.

Turning now to the first problem, that of compliance by the defendant Sheriff with the guard requirements of paragraph 14 of the order, it is clear that what the parties are trying to do is to use the Court to resolve the perennial dispute between the legislative and executive branches of the government over the appropriation of funds. It is highly doubtful whether this is a justiciable matter. Even if it were, for a trial court to enter into such a purely political area would be a major error, for once embarked on a journey into that quagmire, no return would ever be possible, and the Court would end up by having to determine every petty argument between the parties over the expenditure of public funds.

Under the American system of constitutional government, it is the duty of the legislature, in this case the Board of County Commissioners, to raise the funds for governmental operation, and to distribute them among the various executive departments including, in this case, the Sheriff and his department. Since the public funds are not unlimited, and every executive always needs more money than he can get, the matter of appropriations is a highly political one. For the necessarily apolitical court to attempt to resolve such political disputes by legal methods would be the height of folly. This Court is not that foolish. The parties should argue this question to the voters.

The defendant Sheriff contends that in order to carry on all his official functions, he must have a much larger appropriation of public funds than he was granted. Much evidence was adduced concerning the various statutory duties of the Sheriff, and there were very interesting legal disputes about some of them, particularly the statutory duty of the Sheriff to keep the peace.

The defendant Sheriff contends that this duty requires him to maintain a large staff of men constantly patrolling the roads in the rural areas of the County. The other parties contend that his duty is only to respond to calls reporting law violations. The evidence showed that there is a considerable area, more than half the area of the County, which is not policed by local police forces, although only about 6.6% of the County's population lives in that area. During the first three months of this year, the

700

Sheriff received 1597 calls for help, which amounts to an average of eighteen calls a day.

■ The weight of what little authority there is indicates that the Sheriff is only required to respond to calls. He does not have to serve as a patrolman for the County. In re Sulzmann, Sheriff, 125 Ohio St. 594, 183 N.E. 531 (1932); State ex rel. Windham v. La-Fever, Tenn., 486 S.W.2d 740 (1972).

The relevance of this argument, which consumed so much time at the hearing, is the defendant Sheriff's contention that he is not granted sufficient money both to comply with the Court's order for guarding the jail, and to patrol the roads of the County, and perform numerous other duties.

■ This again presents a non-justiciable problem. No public official can provide all the services that he would like to provide, and it is for him to use his judgment as to how he will make his money spread. If he is politically astute, he can perhaps make sufficient political capital of his inability to render services to create pressure upon the legislative branch to increase his appropriation. But no court can very well take a hand in that game. Nor can the court even suggest, much less dictate, in what way an official shall shift his funds in order to comply with a duty which the court has found the law imposes upon him.

■ Presently, the defendant Sheriff and his predecessor have been in contempt for almost two years of the order to guard the jail. In the meantime, fights and even murders go unchecked, and sometimes even unnoticed, among the prisoners. The defendant Sheriff's motion to relieve him of compliance with the Court's former order is overruled. He will be given thirty (30) days from the filing of this memorandum to redeploy his forces or take whatever other steps he wishes to have two guards on duty, with at least one guard patrolling the cellblocks, of each floor of the jail on which prisoners are housed. Thereafter, a fine of twenty-five dollars per day will be imposed upon him for each day until the Court's order is complied with.

■ The evidence with respect to the Court's order concerning visitation of prisoners shows an inexcusable and calculated ignoring of the Court's order. This is made completely incomprehensible by the evidence which showed that the methods used for visitation not only were highly unsatisfactory so far as the visits themselves were concerned, but were dangerous, humiliating, and inconvenient to the public, and presented impossible security risks to the institution. The exact wording of the Court's order showed how to avoid all these problems, that is, by the providing of much more adequate physical facilities for visitation. Sheriff Metzger was apparently so consumed by his desire to revenge himself upon the Court which decided against him that he was willing to cut off his nose to spite his face. The evidence showed that his successor, the defendant Sheriff, is cognizant of what needs to be done to remedy the situation, but has not prepared plans and specifications, and made a requisition upon the defendant County Commissioners for doing the work. No large expenditure of funds would be required, and the defendant Commissioner Holzemer testified that he felt that if a requisition were made, there should be no problems in getting the necessary work done.

Under these circumstances, it is difficult for the Court to understand why the defendant Sheriff has continued for almost four months to put up with conditions which the evidence clearly shows to be intolerable, and asks the Court to change its proper and necessary order in a manner which the evidence also clearly demonstrates would do nothing to relieve the problems, since as a matter of fact the defendant Sheriff has at all times been doing without permission that which he asks the Court to permit him to do.

The Court will allow the defendant Sheriff six (6) weeks from the date of the filing of this memorandum in which to prepare and submit to the Defendant County Commissioners plans, specifications and a requisition for the necessary physical facilities for compliance with paragraph 17(h) of the Court's order of July 30, 1971. Upon a showing of the time beyond that which will be necessary to do the physical work entailed in the improvement, the Court will consider granting additional time if necessary for this purpose. The motion of the defendant Sheriff to establish an age limit on visitors is overruled. This Court strongly disapproves of the practices of the defendant Sheriff and his predecessor in regard to visitation. These defendants deserve the trouble their foolishness and stubbornness is causing them, but the public does not deserve the punishment the practices impose upon it.

The Court, at the present time, makes no finding or order with respect to the numerous portions of the order of July 30, 1971, concerning which the evidence showed marginal or deficient compliance by the various defendants. The plaintiffs are directed to explore these matters further, and within a reasonable time to make a detailed report and recommendations for action, which will then be set for hearing.

The defendants have had almost two years to comply with the Court's explicit and highly detailed order. If they deem that clarification is necessary in any respect, they are warned to seek it promptly by motion, upon which hearing will be granted if necessary, or even desirable. However, if no motions are filed, the Court will have the right to conclude that its orders are understood, and that the failure to comply with them is not inadvertent, but defiant.

During the course of the hearings, the Court reserved rulings upon two matters of evidence. One was the admission of an unsigned deposition offered by the plaintiffs. The defendant Sheriff's objection to this is sustained. The other was the objection of the plaintiffs to the admission of Exhibit AE. The objection is overruled and the exhibit is received.

This memorandum will serve as the Court's findings of fact and conclusions of law. Plaintiffs are directed to prepare and submit an order expressive thereof in accordance with the Rules of this Court.