OPINION
{¶ 1} The instant appeal stems from a final judgment of the Geauga County Court of Common Pleas. Appellants, the Geauga County Board of Commissioners and its three individual members, have requested this court to reverse the trial court's decision ordering them to allocate additional funding to appellee, the Geauga County Sheriff, for the 2002 and 2003 fiscal years. For the following reasons, we hold that a reversal is warranted because the trial court did not apply the correct standard in determining appellants were obligated to provide the additional funds for the operation of the sheriff's department.
 I. {¶ 2} In essence, this appeal constitutes the culmination of a three-year funding dispute between the parties. At the outset of this dispute in May 2000, the office of Geauga County Sheriff was held by George Simmons, who had been originally elected to that position in November 1992. While this appeal was pending before this court, Sheriff Simmons died in July 2003. Since the latter date, Chief Deputy Daniel McClelland has been the acting sheriff for the county.
 {¶ 3} During his first two terms in office, Sheriff Simmons took steps to extend the scope of the law enforcement services his department provided. For example, he increased the number of deputies whose primary duty was to patrol the roads in various parts of the county. As of 2002, his department was the sole provider of such services for a region of approximately 325 square miles, which included eleven townships and one village. Furthermore, Sheriff Simmons increased the number of crime prevention programs overseen by his department's employees, including a drug awareness program in which certain deputies taught classes in various schools throughout the county.
 {¶ 4} In correlation with the expansion of duties, the amount of county funding for the sheriff's department also increased dramatically during the first eight years of Sheriff Simmons' tenure. That is, appellants increased the department's budget from approximately $2.4 million in 1993 to approximately $5.7 million in 2001. As a result, the proportion of the total county budget appropriated to his department rose from twenty-four percent in 1993 to thirty-three percent in 2001.
 {¶ 5} During the majority of the 1990's, the general revenues for Geauga County expanded sufficiently to enable appellants to meet Sheriff Simmons' requests for additional funding. However, beginning in the 2000 fiscal year, appellants chose to adopt a more conservative approach to funding the county departments. This new approach became even more evident when the county's interest revenues began to decrease considerably in 2002.
 {¶ 6} Accordingly, before Sheriff Simmons submitted his proposed budget for the 2001 fiscal year, appellants informed him that his department would not receive any supplemental appropriation during the course of the new fiscal year; i.e., he would only receive the funding which they approved following the original budget negotiations. Appellants also formulated a general plan under which they would not increase the budget of a particular county department unless they were able to maintain the funding for all departments at the levels for the 2000 fiscal year.
 {¶ 7} Even prior to appellants' adoption of their conservative funding approach, a dispute had arisen between the parties about the payment of employee salaries. In August 2000, Sheriff Simmons began to negotiate a new collective bargaining agreement which would cover the majority of the employees in his office. Since a new agreement could not be reached before Sheriff Simmons was required to submit his proposed budget for 2001, his funding request for salaries was set at the identical level which had been approved for the 2000 fiscal year. However, Sheriff Simmons' budget submission to appellants also had a written statement indicating that it was likely that additional funding for salaries would be needed after the collective bargaining process had resulted in a new agreement. Despite this statement, when appellants made their final decision in December 2000 as to Sheriff Simmons' 2001 budget, they only raised the funding for employee salaries by approximately $400,000. Moreover, appellants cut the overall budget for the department by approximately $100,000.
 {¶ 8} Ultimately, Sheriff Simmons and the union for the employees had to submit their salary dispute for final conciliation under the collective bargaining process. Based upon the final decision rendered by the conciliator in February 2001, the resulting collective bargaining agreement had provisions which gave substantial raises to various employees of the department. In addition, as a result of a final judgment rendered against appellants in a separate legal case, Sheriff Simmons was required to hire during the 2001 fiscal year seven new deputies to work at the county jail. Thus, unless Sheriff Simmons cut other aspects of his operation, the amount of funds appropriated by appellants for 2001 would be insufficient to pay the employee salaries for that year.
 {¶ 9} Given the new salary schedule for 2001, Sheriff Simmons asked appellants to appropriate additional funding to cover those salaries. In response, appellants essentially informed Sheriff Simmons that he would have to pay the new salaries from the funds which had already been appropriated for his office. However, not only did Sheriff Simmons continue to pay the new salaries in accordance with the new collective bargaining agreement, but he also did not cut any other aspect of his operations.
 {¶ 10} By October 2001, it had become apparent that Sheriff Simmons intended to pay the higher salaries until the appropriated funding had been depleted. Sheriff Simmons had also indicated to appellants that, if he had used all of the funding before the close of that calendar year, he intended to require his employees to work without pay. As a result, appellants initiated the instant case against Sheriff Simmons, seeking a declaratory judgment as to his legal obligation to follow their prior funding order. Specifically, appellants sought an order stating that Sheriff Simmons had a duty not to deplete his budget until the end of the fiscal year.
 {¶ 11} As part of his answer to appellants' complaint, Sheriff Simmons asserted a counterclaim against them, requesting a declaration that appellants had a duty to appropriate sufficient funds to allow him to comply fully with the new collective bargaining agreement. Once the basic pleadings for the case had been filed, the parties immediately began to engage in discovery. However, before that process could be completed, the 2001 fiscal year concluded. Moreover, by cutting other aspects of his department, Sheriff Simmons was able to pay his employees in accordance with the new salary schedule until the end of the year. Therefore, by February 2002, the merits of appellants' complaint had essentially been rendered moot.
 {¶ 12} Nevertheless, while the discovery process had been going forward, a new dispute had developed between the parties concerning the amount of funding for the sheriff's department during the 2002 fiscal year. In addition to the continuing argument as to employee salaries and the number of employees the department should have, appellants also challenged Sheriff Simmons' basic budget request for approximately $7.1 million. In essence, appellants had decided that, because the county's interest revenues for 2002 would be approximately $900,000 less than the figure for 2001, they would reduce each county department's budget by five percent. Accordingly, appellants ultimately appropriated approximately $5.7 million for the operation of the department during 2002.
 {¶ 13} In making their appropriation for 2002, appellants did not consider whether Sheriff Simmons had any special needs which had to be met for him to satisfy his statutory duties. Furthermore, they did not consider the written statement Sheriff Simmons had submitted with his budget proposal. Instead, they merely decided that they did not have sufficient revenues to appropriate additional funds to him.
 {¶ 14} When this new dispute could not be resolved, Sheriff Simmons amended his original answer to include a new counterclaim for relief. Under this new claim, he requested the issuance of a writ of mandamus requiring appellants to appropriate funds for his department consistent with his budget requests for both the 2002 and 2003 fiscal years.
 {¶ 15} After the discovery process finally ended in July 2002, the parties submitted competing motions for summary judgment on Sheriff Simmons' new mandamus claim. Both motions addressed the issue of the extent of a county sheriff's duties under R.C. 311.07. That statute generally requires a county sheriff to "preserve" the public peace. In their motion, appellants argued that the statutory language only required a sheriff to respond to calls for assistance which come directly to his department. They further argued that the phrase "preserve the peace" did not encompass crime prevention activities, and that it was within their discretion to determine whether funding should be provided for such programs. In response, Sheriff Simmons first contended that he should be given enough funds so that his deputies could patrol the county roads and enforce traffic laws. He also asserted that it was solely within his discretion to decide which crime prevention activities should be funded.
 {¶ 16} On October 8, 2002, the trial court rendered its written judgment overruling both motions for summary judgment. As the basis for this aspect of its decision, the trial court ultimately held that the issue of funding involved questions of fact which could not be resolved in a summary judgment exercise. Nevertheless, the court did grant summary judgment as to two pending issues in the action. First, the court found that appellants had abused their discretion in not fully considering Sheriff Simmons' budget request prior to making the 2002 appropriation decision. Second, the court concluded that Sheriff Simmons had acted contrary to law by adopting the position that he would not negotiate with appellants concerning any budget matters because only he had the authority to determine what funds were reasonable and necessary for the functioning of his department.
 {¶ 17} As part of the summary judgment decision, the trial court also addressed the issue of the relationship between a county sheriff's office and the board of county commissioners. The court first noted that county commissioners were generally required to act in both an executive manner and an administrative manner. In considering the funding of a sheriff's department, the commissioners were acting solely in their legislative capacity. The trial court then indicated that, in relation to some county offices, the Ohio Revised Code expressly stated that the board was required to provide certain funding. However, in regard to the sheriff's office, the Revised Code did not contain any specific requirement concerning the amount of funding,
 {¶ 18} The trial court next noted that a county sheriff has a specific duty under R.C. 311.07 to "preserve" the public peace. In trying to interpret this statutory phrase, the trial court first stated that any decision about the scope of a sheriff's duties should be within the sheriff's discretion because he had the most training in the law enforcement field. The trial court then stated that any decision as to whether a specific duty is mandatory under the statute was a question of fact; that is, the court essentially concluded that it had the ability to decide whether a sheriff had abused his discretion in determining whether a particular duty or act is part of preserving the peace. The court then held that, as a general proposition, crime prevention programs should be viewed as part of preserving the peace.
 {¶ 19} Based upon the foregoing, the trial court then indicated that if a particular expenditure was related to preserving the peace, appellants could reject Sheriff Simmons' request only when the amount he sought was unreasonable, or if there were insufficient funds to cover the request. But if an expenditure did not relate to keeping the peace, appellants could reject the request in its sound discretion. In then applying this standard to the facts set forth in the evidentiary materials, the court concluded that appellants in this instance had abused their discretion in rejecting the majority of Sheriff Simmons' funding requests without even reading his submitted statements on certain matters. As was noted above, the trial court granted summary judgment in favor of Sheriff Simmons on this limited point.
 {¶ 20} Therefore, for purposes of its summary judgment discussion, the trial court accepted appellants' argument only as to Sheriff Simmons' non-mandatory duties under R.C. 311.07. The trial court held that it was primarily for Sheriff Simmons to decide what constitutes "keeping the peace" for statutory purposes, and that his decision on that matter could only be rejected when he abused his discretion. Accordingly, the court stated that a trial was necessary to resolve the following issues: (1) which aspects of Sheriff Simmons' budget pertained to his basic duty to preserve the peace; and (2) had appellants abused their discretion in rejecting any funding request pertaining to a "collateral" duty of Sheriff Simmons.
 {¶ 21} A two-day bench trial was held within ten days following the issuance of the summary judgment decision. In this hearing, Sheriff Simmons gave substantial testimony in support of the various funding requests he had made for both the 2002 and 2003 fiscal years. His testimony covered specific topics, including employee salaries, equipment for the five divisions of his department, and the replacement of the cruisers used by his deputies while on patrol. In relation to the need for more deputies, Sheriff Simmons testified that, as a result of the limit placed on his budget by appellants, the time it took his department to respond to calls for assistance had increased steadily since 2000.
 {¶ 22} In response to the evidence presented by Sheriff Simmons in support of his mandamus claim, appellants relied primarily on the testimony of Mary Elizabeth Vaughn, the Director of Administrative Services for the county. None of the three Geauga County Commissioners actually testified at trial; instead, they relied on the three depositions which had been submitted to the trial court as part of the summary judgment exercise.
 {¶ 23} Based upon the evidence presented at trial, the trial court issued its final judgment in favor of Sheriff Simmons on his mandamus claim. At the beginning of this judgment, the trial court restated its basic analysis as to the nature of the relationship between Sheriff Simmons and appellants in a slightly different way. Specifically, the court indicated that, even though appellants could exercise more discretion over the budgets of some county offices, their discretion was limited in regard to any office which pertains to the administration of justice. As to keeping the peace, the trial court again stated that the phrase must be interpreted broadly because modern law enforcement services include legitimate crime prevention programs.
 {¶ 24} In the next part of its final judgment, the trial court made specific findings as to many of the exact budget requests Sheriff Simmons had made in both fiscal years. In considering each request, the court would expressly determine whether that request was related to "preserving the peace" and whether it was necessary and reasonable. For example, the court found that the employment of deputies to patrol the county was a reasonable expenditure and was necessary in regard to keeping the peace. In contrast, the court concluded that the hiring of a victim's advocate was not a necessary expenditure for keeping the peace.
 {¶ 25} As part of its factual findings, the trial court again stated that appellants had abused their discretion by not fully considering the reasons for Sheriff Simmons' various budget requests. As to this point, the trial court found that it had been improper for appellants to predicate their decision upon "historical" budgets, in which they merely considered how much the sheriff's department had received the prior years. In addition, the court found that appellants had acted improperly by not participating in the negotiations between Sheriff Simmons and the union for many of the department's employees.
 {¶ 26} Ultimately, the trial court concluded that appellants had failed to appropriate sufficient funds in 2002 for Sheriff Simmons to preserve the peace in accordance with his statutory duties. Nevertheless, the court also concluded that most issues concerning funding for the 2002 fiscal year had already become moot, and that appellants could only be required to make an additional appropriation of $1.1 million in 2003 to cover certain equipment purchases which should have been made in 2002. In regard to the 2003 fiscal year, the court held that appellants did have sufficient funds to satisfy Sheriff Simmons' entire budget request for approximately $9.3 million, and that they had abused their discretion in only appropriating $5.7 million. Thus, in light of its specific findings concerning Sheriff Simmons' various budget requests, the trial court ordered appellants to appropriate to Sheriff Simmons a total of $8.2 million, which included $7.1 million dollars for the 2003 fiscal year and $1.1 million for 2002.
 II. {¶ 27} In appealing the latter judgment, appellants have assigned the following as error:
 {¶ 28} "1. The Trial Court erred by concluding R.C. 311.07(A) imposes a duty, enforceable in mandamus, upon the commissioners.
 {¶ 29} "2. The Trial Court erred by requiring the Commissioners to defer to the Sheriff's budget requests absent proof the Sheriff abused his discretion.
 {¶ 30} "3. The Trial Court erred by concluding the Commissioners abused their discretion in setting the Sheriff's appropriations.
 {¶ 31} "4. The Trial Court erred by denying the Commissioners' Motion for Summary Judgment.
 {¶ 32} "5. The Judgment is unsupported by the evidence.
 {¶ 33} "6. The Trial Court abused its discretion."
 {¶ 34} Appellants' first three assignments of error pertain to the merits of the trial court's legal analysis as to the scope of a county sheriff's mandatory duties and the extent of their corresponding obligation to provide funding for those duties. Under their first assignment, they essentially argue that the trial court interpreted R.C.311.07(A) too broadly. First, appellants contend that the trial court erred in determining that only Sheriff Simmons could determine whether a specific act fell within the parameters of "preserving" the public peace. Second, they assert that the trial court should have held that patrolling the county roads and engaging in crime prevention programs are not mandatory duties because they do not directly pertain to preserving the peace under the statute.
 {¶ 35} As the parties correctly note in their respective briefs, the primary duties of a county sheriff are set forth in R.C. 311.07(A). This statute provides, in pertinent part: "Each sheriff shall preserve the public peace and cause all persons guilty of any breach of the peace, within the sheriff's knowledge or view, to enter into recognizance with sureties to keep the peace and to appear at the succeeding term of the court of common pleas, and the sheriff shall commit such persons to jail in case they refuse to do so. * * *."
 {¶ 36} Our review of the relevant case law interpreting the foregoing statute shows that the "preserve the public peace" language has been contained within R.C. 311.07(A) for at least eighty years. Despite this, the pertinent language has only been subject to court interpretation in a relatively small number of cases.
 {¶ 37} The most recent decision applying R.C. 311.07(A) is LorainCty. Deputies Assoc. v. Vasi (Dec. 16, 1992), 9th Dist. No. 92CA005337, 1992 Ohio App. LEXIS 6392. In that case, the county commissioners decided to reduce the sheriff's budget by nearly $350,000. After the sheriff was forced to layoff eighteen deputies, the union for the deputies brought a declaratory judgment action against the commissioners, requesting a determination that the layoffs were illegal. The trial court dismissed the deputies' complaint, concluding in part that R.C. 311.07(A) had to be applied in a narrow manner.
 {¶ 38} On appeal to the Ninth Appellate District, the deputies inVasi challenged the trial court's interpretation of the "preserve the peace" language in the statute. In affirming the trial court's decision, the Vasi court stated: "The Ohio Supreme Court has held that the mandate to `preserve the public peace' does not require that a sheriff patrol his county as a policeman or ferret out crime as a detective. In reSulzmann, Sheriff (1932), 125 Ohio St. 594-597. More recently, a United States District Court for the Northern District of Ohio held that `the weight of what little authority there is indicates that the Sheriff is only required to respond to calls. He does not have to serve as a patrolman for the County. * * *' Jones v. Wittenberg (N.D.Ohio 1973),357 F. Supp. 696, 700, citing In re Sulzmann, Sheriff (1932),125 Ohio St. 594." Vasi at 3.
 {¶ 39} In support of its decision, the Vasi court also noted that, under R.C. 505.43, townships and municipal corporations within a county can enter into contracts with a county sheriff for the performance of law enforcement services. Based on this, the court concluded that a county sheriff was not obligated to provide police protection throughout the entire county; instead, a sheriff's sole duty under R.C. 311.07(A) was to respond to calls for assistance. Accordingly, the Vasi court held ultimately that the decision to provide any services beyond responding to specific calls was within the discretion of both the county commissioners and the sheriff.
 {¶ 40} After considering the relevant statutory provisions, this court concludes that the logic of the Vasi decision is persuasive. As to this point, we would state that, although the general scope of law enforcement services has increased through the years, the Ohio General Assembly has not chosen to change the "preserve the peace" language in the statute. As a result, the narrow interpretation of R.C. 311.07(A), as originally stated by the Supreme Court of Ohio in In Re Sulzmann, supra, must still be followed. That is, when read in the context of the entire statute, the phrase "preserving the public peace" must be interpreted to apply only to those violations of the peace of which the sheriff has knowledge or takes place in his presence.
 {¶ 41} Moreover, when R.C. 311.07(A) and R.C. 505.43 are read in pari materia, it is apparent that there is a mechanism by which townships and municipalities can contract for law enforcement services. Thus, as to those entities, the General Assembly did not obligate the county government to provide law enforcement services that go beyond the scope of the narrow definition of preserving the peace. Therefore, it follows that a board of county commissioners has the discretion to determine whether to use county funds for the purpose of allowing the sheriff's department to patrol the county roads and perform other acts which, although broadly related to keeping the peace, do not fall within the narrow duty defined in R.C. 311.07(A).
 {¶ 42} In response to appellants' argument under the first assignment, appellee contends that the Vasi decision should not be followed because that case did not involve a situation in which the county sheriff was seeking to continue to provide law enforcement services to the entire county. As to this point, this court would note that the county sheriff was not a party to the Vasi case. However, the statement of facts in Vasi indicated that the county sheriff had been a party to a prior case in which he had fought against the decrease in funding. More importantly, a review of the Vasi analysis shows that the outcome of the case did not turn upon whether the sheriff agreed or disagreed with the funding cuts. Instead, the decision was predicated upon the specific wording of R.C. 311.07(A) and its relation to R.C. 505.43.
 {¶ 43} In the instant case, the trial court essentially held that only Sheriff Simmons himself could decide what duties his department needed to perform to keep the peace. While this court would readily agree that Sheriff Simmons was certainly qualified to state whether a specific act was generally related to maintaining the peace, his superior knowledge is not controlling as to the proper legal interpretation of R.C. 311.07(A). Pursuant to Vasi, patrolling county highways and engaging in crime prevention programs are not mandatory duties for a county sheriff under R.C. 311.07(A). If appellants make an informed decision to not provide those services to townships and municipal corporations, they have the discretion to do so. Therefore, since the trial court misinterpreted R.C. 311.07(A), appellants' first assignment of error has merit.
 {¶ 44} Under their second assignment, appellants submit that the trial court erred in applying to the facts of this case the legal standard which is typically followed in cases involving the funding of common pleas courts; to wit, in court funding cases, the board of county commissioners have the burden of demonstrating that the funding request is unreasonable under the circumstances. Appellants contend that the nature of the relationship between a county sheriff and the commissioners is inherently different than the relationship between a common pleas court and the commissioners. Specifically, appellants argue that the trial court should have placed the burden upon Sheriff Simmons to show that they had abused their discretion in refusing to fund him in accordance with his budget requests.
 {¶ 45} This court had a prior opportunity to address the issue of when a board of county commissioners has the burden of establishing that a budget request for a county official is unreasonable. In Whitman v.Magee (Oct. 4, 1985), 11th Dist. No. 3558, 1985 Ohio App. LEXIS 7326, the primary question before this court concerned whether the clerk for the common pleas court had the discretion to set her own budget. In holding that the clerk lacked such discretion, we began our analysis by indicating that the general rule as to the discretion of a common pleas court in funding matters emanates from the provisions of the Ohio Constitution which governs the court's authority. However, we then noted that when a public official's authority is predicated solely upon statutory provisions, the extent of the official's discretion over her spending will not turn on the exact nature of the relationship between the commissioners and the official; instead, it will turn on the wording of the controlling statutory provisions.
 {¶ 46} Specifically, in Whitman, this court stated that if the statutes which set forth the duties of a county official expressly indicate that the county commissioners have a mandatory duty to provide the funds sought by that official, the commissioners have no discretion in the matter. Under such a scenario, if the reasonableness of the requested appropriation is challenged in a legal action, the board would have the burden of demonstrating that the official has abused his discretion. However, if the applicable statutes provide that it is the commissioners who have the authority to set the funding for the county official, the latter party has no discretion in the matter and, thus, would have the burden of showing that the county commissioners had acted unreasonably. Id. at 6.
 {¶ 47} The basic statutory provisions governing the operation of the county sheriff's office are set forth in R.C. Chapter 311. Our review of the various statutes in this chapter shows that they do not contain any provisions which expressly give the sheriff the authority to mandate certain funding for his department. R.C. 311.07, which delineates the sheriff's basic duties, does not contain such a provision. Similarly, such a provision is not set forth in R.C. 341.01, which states that the sheriff is responsible for operating the county jail.
 {¶ 48} On the other hand, the Ohio Revised Code does have some statutes which indicate that the Ohio General Assembly intended for county commissioners to exercise some control over the funding of the sheriff's office. For example, R.C. 307.01(A) states that the commissioners must provide for all county officials all physical facilities which are "needed." In addition, that statute states that county commissioners must provide to the officials any equipment which is "necessary" for the proper functioning of the offices. Finally, R.C. 325.17
provides that, even though county officials have the power to hire certain employees to assist in the operation of the office, the officials cannot give the employees any compensation which is greater than the amount "fixed" by the commissioners.
 {¶ 49} Taken as a whole, the applicable statutory provisions support the conclusion that the determination of funding for the Geauga County Sheriff lies solely within appellants' sound discretion. Stated differently, the foregoing provisions readily indicate that Sheriff Simmons did not have any authority to mandate the amount of funding for his department. As a result, the trial court should have placed the burden upon Sheriff Simmons to establish that appellants' appropriations to him for the 2002 and 2003 fiscal years were unreasonable, even as to the mandatory duties under R.C. 311.07(A).
 {¶ 50} As was noted previously, the trial court basically concluded that the funding determination fell within Sheriff Simmons' discretion. Based upon this erroneous conclusion, the court did not follow the correct standard in reviewing the propriety of appellants' actions. Therefore, appellants' second assignment of error is also well-taken.
 {¶ 51} Under their third assignment, appellants challenge the trial court's "abuse of discretion" finding. Under that finding, the trial court essentially determined that appellants had not followed the proper procedure in reviewing Sheriff's Simmons' budget requests. In now contesting this finding, appellants contend that, since it was within their discretion to reject his budget requests, the mere fact that they only appropriated approximately $5.7 million for the 2003 fiscal year cannot be viewed as an abuse of discretion. Appellants further emphasize that an abuse of discretion could not have occurred when they did not cut his overall budget to the same extent as the budgets of other county officers.
 {¶ 52} Reduced to its simplest terms, the issue before this court in this assignment is: what type of analysis must a board of county commissioners engage in when reviewing a budget request from a county official? Again, this court has previously addressed this specific issue. In Whitman, supra, we stated that, in setting the amount of funding for a county office, a board must determine if the appropriated funds will be sufficient to enable the official to perform his statutory duties. Id. at 9. Thus, in the instant action, appellants were required to consider what amount of funding was necessary for Sheriff Simmons to complete his basic duties, such as preserving the peace, providing security for certain county courts, serving court documents, and operating the county jail.
 {¶ 53} At the outset of our discussion on this point, this court would again note that the trial court's finding on this matter was made as part of the summary judgment exercise. In conjunction with his motion for summary judgment, Sheriff Simmons submitted the separate depositions of the three Geauga County Commissioners, Jan Novak, Neil Hofstetter, and William Repke.
 {¶ 54} Our review of these three depositions readily demonstrates that none of the three commissioners ever considered Sheriff Simmons' basic statutory duties in making their appropriation decisions for 2002 and 2003. In fact, the depositions show that the commissioners had not made an effort to discern what those basic duties were, let alone predicate their decisions on their perception of the duties. As to this point, we would emphasize that, as part of their first assignment in this appeal, appellants have argued that patrolling the county roads and engaging in crime prevention programs were not mandatory "duties" which Sheriff Simmons had to perform in order to preserve the peace under R.C.311.07(A). While this court would certainly agree that funding for such actions would be discretionary, it is apparent from the depositions that the three commissioners had not made a conscious decision to cut this discretionary spending. Instead, their argument as to the discretionary nature of this spending was not offered as a justification for their decisions until this action had been initiated.
 {¶ 55} Moreover, the three commissioners expressly stated during their respective depositions that they never personally reviewed the written statement Sheriff Simmons had submitted with his budget request for the 2002 fiscal year, and that only one of the three commissioners considered the issues raised in his written statement for 2003. In light of the fact that Sheriff Simmons' written statements for both years could have shown to some degree that his budget requests were necessary for him to perform his mandatory duties, we agree with the trial court. Appellants could not have made an informed appropriation decision without being aware of, and considering, the substance of the submitted statement of explanation for each year. This is not to say that appellants need to employ a line-item veto. Rather, it means appellants can adjust the overall budget requests to reflect their evaluation of what is mandatory and what is not, and what would constitute a properly considered level of funding.
 {¶ 56} Taken as a whole, the evidential materials submitted by the parties showed that appellants' ultimate decision to give only $5.7 million to Sheriff Simmons for both years was based in part upon the fact that $5.7 million was approximately the amount which had been appropriated to him in the 2001 fiscal year. That is, appellants placed considerable emphasis on an "historical" review of what funds had previously been given to the sheriff's department. Although prior funding is a relevant factor in this type of determination, the fact that appellants continued to appropriate the same yearly amount to Sheriff Simmons is not sufficient to show that they exercised their discretion in a proper manner. To satisfy their own duty to review the yearly budget requests, appellants were required to consider the substance of Sheriff Simmons' submission in the context of his mandatory duties under the applicable statutes. Again, by not doing so, they could not know whether a special situation existed which might warrant additional funding.
 {¶ 57} As an aside, we would further note that appellants' appropriation decisions for 2002 and 2003 were also based upon their general determination to try to treat each county office the same in regard to the need to make budget cuts. Even though such a policy might be somewhat appealing at first glance, it simply has no place in a proper budget analysis because it does not focus on the respective mandatory duties of each county official. Specifically, such a policy does not recognize that if the budget of one county official only contains funding for mandatory duties, his budget should not be cut until the discretionary spending in the budgets of the other county officials have been eliminated. In addition, this policy does not account for the fact that, in a given year, special facts could exist which would warrant additional funding for one county official even when the budgets of all other officials must be decreased.
 {¶ 58} As a result, appellants cannot simply set a general policy concerning the funding of county offices and then apply it across the board without considering the individual circumstances of each office. That is, they are required to review the budget submission of each county official in the context of his or her mandatory statutory duties. Without such a review, an abuse of discretion has occurred because the decision has been made in an arbitrary and unreasonable manner.
 {¶ 59} In the instant case, the depositions filed by Sheriff Simmons supported the finding that such a comprehensive review was never undertaken as to his budget requests for the two fiscal years. In responding to Sheriff Simmons' summary judgment motion, appellants never submitted any evidential materials contradicting this factual point. Thus, the undisputed facts before the trial court readily established that appellants never truly considered the individual facts pertaining to the sheriff's department, in light of the sheriff's mandatory statutory duties, before making the final appropriation decision for each year.
 {¶ 60} As a general proposition, summary judgment can be granted in relation to a material issue in a civil action when: (1) there is no relevant question of fact remaining to be litigated concerning that issue; (2) the nature of the evidential materials are such that, even when the materials are construed in a manner most favorable to the non-moving party, a reasonable person could only reach a conclusion adverse to the non-moving party; and (3) the moving party is entitled to prevail on the issue as a matter of law. Welco Industries, Inc. v. AppliedCos. (1993), 67 Ohio St.3d 344. In applying this standard to this case, this court holds that the trial court did not err in granting summary judgment in favor of Sheriff Simmons on the "abuse of discretion" issue. The undisputed facts showed that, prior to making the appropriation decisions, appellants failed to consider whether there were any special circumstances which warranted appropriating more funds to Sheriff Simmons. As a result, appellants' third assignment lacks merit.
 {¶ 61} Under their fourth assignment, appellants maintain that summary judgment should have been granted in their favor as to Sheriff Simmons' mandamus claim. As the basis for this argument, appellants submit that the majority of the funding Sheriff Simmons requested for the 2002 and 2003 fiscal years were needed only to patrol the county and to provide for crime prevention programs. They further submit that, because it was within their discretion to deny funding for these two discretionary functions, there was no factual dispute that the $5.7 million they appropriated to him in both years was sufficient for him to properly operate the entire department.
 {¶ 62} As to this argument, this court would again indicate that, pursuant to our analysis under the third assignment, we conclude that the trial court did not err in holding that appellants had abused their discretion in reviewing Sheriff Simmons' budget requests for both of the disputed years. Therefore, even if some of the requested funding was for items which did not fall within the narrow interpretation of R.C. 311.07(A), appellants could not properly reject the funding request until it had fully considered the merits of Sheriff Simmons' budget requests. Under such circumstances, appellants would not have been entitled to summary judgment as to the mandamus claim. Pursuant to this analysis, appellants' fourth assignment would also be without merit.
 {¶ 63} Under their fifth assignment, appellants contend that two aspects of the trial court's factual findings were against the manifest weight of the evidence. First, they submit that the trial court erred in finding that there were sufficient funds in the county's general revenue account to appropriate additional funding to Sheriff Simmons for the 2003 fiscal year. Second, they assert that the trial court granted additional funds to Sheriff Simmons for items which he never properly requested in his proposed budgets.
 {¶ 64} As to appellants' first argument, this court would first note that the evidence presented at trial readily established that the total general revenue for Geauga County in the 2003 fiscal year would be approximately $18.3 million. At the end of its final judgment, the trial court ordered appellants to pay a total of $8.2 million to Sheriff Simmons, which included $7.1 million for all basic expenditures in 2003 and $1.1 million to cover certain expenditures from 2002 which had never been paid. Since $8.2 million is obviously less than the county's total revenue, the trial court found in the final judgment that appellants had enough funds to comply with its order. The court further stated that if appellants would raise the county sales tax by 0.5 percent, it could generate an additional $2 million in revenue.
 {¶ 65} Although their argument on this point is phrased in terms of manifest weight, appellants do not contest any of the foregoing figures. Instead, they assert that it was simply improper for the trial court to order them to appropriate an additional sum of $2.5 million to Sheriff Simmons when all of the $18.3 million had already been earmarked for other matters. Essentially, appellants maintain that the trial court could not require them to take funds away from other county officer holders in order to pay Sheriff Simmons.
 {¶ 66} In light of the trial court's reference in its final judgment to the county's sales tax, it is apparent that the trial court envisioned that appellants would have two options: (1) they could raise the county sales tax; or (2) they could cut the discretionary spending for the other county departments. Although appellants might not care for either branch of this option, this type of requirement is consistent with the remedy usually used in government spending actions; i.e., if the ordered funding is necessary for the public official to perform his mandatory duties generally, appellants must find a way to pay it.[1]
Thus, if the reversal of the trial court's decision was not warranted for the reasons stated under the first two assignments, we still would not hold that the trial court had abused its discretion in requiring appellants to appropriate the additional amount despite the fact that the remaining funds in their general revenue account had already been earmarked for other purposes.
 {¶ 67} As to appellants' second argument under this assignment, this court would merely indicate that our review of the trial transcript shows that Sheriff Simmons gave some testimony as to why his department needed the various items for which the trial court subsequently gave funding. Furthermore, our review of his budget requests, which were submitted as exhibits at trial, establishes that he requested funding for the disputed items from appellants. Therefore, since the record before us contains some competent, credible evidence supporting the trial court's decision to order additional funding in regard to the disputed items, the fifth assignment of this appeal is not well-taken.
 {¶ 68} Under their final assignment, appellants maintain that the trial court erred as a matter of law in taking it upon itself to determine the amount of supplemental funding needed to adequately provide for the sheriff's department. They argue that, once the trial court had determined that they had abused their discretion in considering Sheriff Simmons' 2003 budget request, it should have allowed them to reconsider the matter and make an additional appropriation.
 {¶ 69} It is well-settled under Ohio law that a writ of mandamus will not lie to control the discretion of a court, even if that court has abused its discretion. State ex rel. Keenan v. Calabrese (1994),69 Ohio St.3d 176, 180. It is equally well-settled that a writ of mandamus cannot be used to require a legislative or administrative body to act in a particular way if no abuse of discretion has yet occurred.State ex rel. Veterans Serv. Office v. Pickaway Cty. Bd. of Cty. Commrs.
(1991), 61 Ohio St.3d 461, 463. However, if a nonjudicial public body has already abused its discretion, the writ can lie to correct that abuse.State ex rel. Sinay v. Sodders (1997), 80 Ohio St.3d 224, 232.
 {¶ 70} In Whitman, supra, this court affirmed the trial court's finding that the board of county commissioners had abused its discretion in funding the county clerk of courts. Nevertheless, we still reversed the issuance of the writ because the trial court had not taken enough evidence to determine the amount of funds the clerk actually needed. As part of our judgment, we ordered the trial court to take more evidence concerning the clerk's needs and then expressly determine what funds were necessary for the clerk to perform her duties.
 {¶ 71} Even though our Whitman opinion did not cite any case law to support our remand order, the order was consistent with the Sinay
holding; i.e., because the board had already abused its discretion, the facts of that case dictated that the trial court could correct the abuse by determining what funding was actually needed.
 {¶ 72} Although not discussed in Sinay or Whitman, there is considerable precedent for the legal proposition that, once a trial court has struck down a legislative act, it cannot encroach upon the prerogative of the legislature by dictating the provisions of the new act. See, e.g., State ex rel. State v. Lewis, 99 Ohio St.3d 97,2003-Ohio-2476, in which the Supreme Court of Ohio held that a trial court cannot retain jurisdiction to review any new legislation concerning school funding. In light of this general proposition, this court does not interpret Whitman to mean that a trial court is always obligated to determine the amount of funding a board of county commissioners should be required to provide. Instead, it is our position that such a procedure is dependent on the specific factual predicate in a given case, and that, under the proper circumstances, a trial court also has the ability to order the board to render a new decision once an abuse of discretion has been found. This may also occur as a result of a mandate issued by an appellate court to the trial court.
 {¶ 73} Allowing the board to render a new funding decision is preferable in some situations because there will be additional pressure on all sides to truly negotiate and resolve the matter in an acceptable manner. Accordingly, if there is no time constraint requiring a final funding decision immediately, a trial court should give the board a second opportunity to render a determination on the matter.
 {¶ 74} However, in other instances, time limitations may dictate that the trial court itself must set the level of funding. The instant case is a prime example of this type of situation; i.e., the start of the 2003 fiscal year was so close that it was imperative for the trial court to resolve the matter. In addition, we would indicate that it would be appropriate for a trial court to set the level of funding when the abuse of discretion is so egregious that allowing the board to consider the matter again might be an exercise in futility.
 {¶ 75} Accordingly, while we agree that the trial court did not apply the correct standard when it attempted to determine the amount of the funding needed, the foregoing authority supports the conclusion that the trial court did not abuse its discretion in attempting to make such a determination once it had first found that appellants had abused their discretion in the funding matter. For this reason, the final assignment in this appeal is not well taken.
 III. {¶ 76} Pursuant to our discussion under the first and second assignments of error, this court holds that the trial court erred in two respects: (1) the court interpreted R.C. 311.07(A) too broadly to include law enforcement services which do not fall within the scope of "preserving" the peace; and (2) the court erred as a matter of law in deciding that the amount of funding for the sheriff's department fell within the sheriff's own discretion. These errors clearly tainted the court's subsequent factual findings as to the amount of funds the Geauga County Sheriff needed to operate the department. Under these circumstances, this court would normally remand the case to the trial court so that it could make new factual findings using the correct standards.
 {¶ 77} However, remanding this action for new factual findings would be a useless exercise because the trial court could not make the new findings before the end of the 2003 fiscal year. Furthermore, we would note that, even though the trial court granted appellants a stay of its funding order when this appeal was first filed, the trial court subsequently vacated the stay. This court then overruled appellants' motion to reinstate the stay. As a result, appellants' obligation to provide funding for the 2003 fiscal year is now a moot issue because they should have already complied with the trial court's funding order.
 {¶ 78} Despite the foregoing circumstances, we still have gone forward to address the merits of appellants' six assignments of error. We have done so for two basic reasons. First, the subject matter of this action was of great public interest to the citizens of Geauga County. In reviewing court funding cases, the Supreme Court of Ohio has held that when such a case is of great public interest, its merits can still be addressed even if the matter has become moot. State ex rel. Weaver v.Lake Cty. Bd. of Commrs. (1991), 62 Ohio St.3d 204, 207; State ex rel.Rudes v. Rofkar (1984), 15 Ohio St.3d 69, 71. Second, since appellants and the Geauga County Sheriff must continue to deal with each other in regard to future budget matters, it was important to resolve the disputed issues in this appeal so that any future dispute can be settled in a more efficient and amicable manner.
 {¶ 79} Prior to summarizing our holding, we would emphasize that, regardless of the funding criteria which is set forth in our opinion, the parties' disagreement over funding will continue in the future unless both sides become willing to discuss these matters in good faith. The record before us readily shows that this case is a classic example of a situation in which the participants allowed their strong personal views to interfere with the possible resolution of this dispute. Although both sides claimed to be protecting some aspect of the public interest, their respective inability to negotiate the matter in good faith has not inured to the benefit of the Geauga County citizens.
 {¶ 80} As a first step toward good faith negotiations, appellants must truly review the materials which the Geauga County Sheriff submits with his budget request. Moreover, appellants must review the materials in light of the Sheriff's mandatory duties under the applicable statutes. Although this does not require appellants to have knowledge of every detail of the Sheriff's operation, they must have a grasp of his basic duties. An informed decision cannot be made without this type of knowledge.
 {¶ 81} In addition, appellants' final appropriation decision must be shaped to allow the Sheriff to fulfill his mandatory duties, and must be shaped to meet any special contingency which might develop in a given year, such as a new collective bargaining agreement. As previously indicated, while this does not mean that appellants must conduct a minutia analysis of his budget, it certainly does mean that they must truly review any claim of special circumstance to decide if the Sheriff needs more funds than the other county officials. Appellants cannot base their decision solely upon a comparison with the amount of funding given in the prior years. That comparison can be a factor, but it cannot be the sole basis of the decision.
 {¶ 82} On the other hand, the Geauga County Sheriff must always keep in mind that the funding of his department, even as to his mandatory statutory duties, is a matter within appellants' sound discretion, and that he would have the burden of showing in any subsequent legal action that they have acted in an unreasonable or arbitrary manner. As to this point, we would emphasize that, once appellants have followed the proper procedure for making an appropriation decision, it will be difficult for an official to prove an abuse of discretion. A mere disagreement over policy is not sufficient to carry such a burden.
 {¶ 83} Finally, this court would again state that we have interpreted the Sheriff's "preserving the public peace" duty in the traditional, narrow manner. Since this interpretation has been made as a matter of law, the Sheriff is not free to disagree with it on the basis that it fails to comport with modern law enforcement practices. In addition, under this interpretation, certain practices which the Sheriff has followed in prior years, such as patrolling the county roads, are still not considered mandatory duties. As a result, the continuing funding of those practices is within appellants' sound discretion, and they can essentially choose to require the townships and municipalities to pay for such services themselves even when the county still has sufficient funds to cover them. Such a decision is a pure public policy determination, and can be challenged only at the ballot box.
 IV. {¶ 84} For the foregoing reasons, appellants' first and second assignments of error have merit. Accordingly, the judgment of the trial court is reversed, and the case is hereby remanded for further proceedings consistent with this opinion. That is, the trial court shall vacate its final judgment of November 8, 2002, and shall issue a new final judgment dismissing this entire action as moot.
Donald R. Ford, P.J., Judith A. Christley and Cynthia Westcott Rice, JJ., concur.
[1] The only instance in which there would be no obligation to fund a mandatory duty is when there is a total collapse of the county budget. Such a collapse clearly did not occur in this case.